Argued and submitted January 13, reversed and remanded with instructions April 13, respondent's petition for reconsideration filed April 26, appellant's response to petition for reconsideration filed April 28, and respondent's reply in support of petition for reconsideration filed May 5 allowed by opinion June 15, 2005 See 200 Or App 239 (2005)

## MARC NELSON OIL PRODUCTS, INC.,
an Oregon corporation,
*Respondent,*

*v.*

## GRIM LOGGING COMPANY, INC.,
an Oregon corporation,
*Defendant,*

*and*

Robert GRIM,
*Appellant.*

02C12988; A123447

110 P3d 120

Thomas C. Tankersley argued the cause for appellant. With him on the briefs was Drabkin & Tankersley, LLC.

Gina Anne Johnnie argued the cause for respondent. With her on the brief was Sherman, Sherman, Johnnie & Hoyt, LLP.

Before Linder, Presiding Judge, and Haselton* and Ortega, Judges.

LINDER, P. J.

---

\* Haselton, J., *vice* Ceniceros, S. J.

## LINDER, P. J.

This is a proceeding seeking to hold defendant, Robert Grim, liable as a guarantor of a debt incurred by Grim Logging Company, Inc. (Grim Logging). Grim Logging contracted to purchase diesel fuel from Hance Oil Company (Hance Oil), and defendant signed as a personal guarantor of the account. Hance Oil later assigned the contract to plaintiff, Marc Nelson Oil Products, Inc. The trial court concluded that defendant was not discharged as a guarantor as a result of the assignment because there was no material increase in risk to defendant as guarantor and that defendant therefore was liable as a matter of law to plaintiff. As a result, the trial court granted plaintiff's motion for summary judgment, denied defendant's cross-motion for summary judgment, and awarded plaintiff damages and attorney fees. We conclude, contrary to the trial court, that the assignment did materially increase defendant's risk as guarantor and, as a result, it operated to discharge defendant as a matter of law. We therefore reverse and remand.

On appeal, defendant challenges the denial of his cross-motion for summary judgment as well as the grant of plaintiff's motion for summary judgment.[1] Consequently, both rulings are subject to review. *See Cochran v. Connell*, 53 Or App 933, 939-40, 632 P2d 1385, *rev den*, 292 Or 109 (1981). Each party has the burden of demonstrating that there are no material issues of fact and that the movant is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 939 P2d 608 (1997); *McKee v. Gilbert*, 62 Or App 310, 321, 661 P2d 97 (1983). We review the record for each motion in the light most favorable to the party opposing it. *Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 655, 576 P2d 356 (1978). Unless otherwise noted, however, the facts are undisputed. Primarily, the parties dispute the legal significance of the facts.

---

[1] Defendant raises those challenges by way of four assignments of error that are directed to various aspects of the trial court's analysis. Assignments of error, however, are to be directed against rulings by the trial court, not against components of the trial court's reasoning or analysis that underlie that ruling. *See* ORAP 5.45(3); *Simonsen v. Ford Motor Co.*, 196 Or App 460, 465-66 n 7, 102 P3d 710 (2004). In this particular case, defendant's noncompliance with our rules has not impeded our review of the pertinent ruling.

Grim Logging is a family business of which defendant, during the period in question, was a one-third owner and an officer of the company. At that time, the remaining shares in the company were owned by defendant's brother and father, who were also officers of the company, and by defendant's mother. In October 1987, Grim Logging entered into a contractual agreement with Hance Oil by which Grim Logging agreed to purchase diesel fuel from Hance Oil. So that Grim Logging could make those purchases on credit, defendant filled out, on Grim Logging's behalf, a "New Customer Information" form supplied by Hance Oil and personally signed a section entitled "Agreement and Guaranty." That section stated:

> "I have made the above statements for the purpose of obtaining credit. I certify they are true and authorize you to make a credit investigation. Billings shall be issued twice each month and payment will be due in full within 10 days of invoice date. I agree to pay a finance charge of 1½% per month (18% per year) on any delinquent balances. This agreement includes the terms and conditions on the reverse side hereof.

> *"Notwithstanding that this account is established in the name of [Grim Logging], I personally guarantee payment of the account."*

(Emphasis added.) From October 1987 until July 1996, Grim Logging regularly purchased fuel from Hance Oil, as well as from other fuel suppliers.

On August 1, 1996, Hance Oil sold some of its assets to plaintiff. Included among them was Grim Logging's account. As a result, beginning that date and continuing until early 2002, plaintiff sold fuel to Grim Logging, just as Hance Oil had before August 1996. Although plaintiff notified Hance Oil customers generally of the assignment of the assets, and thus may have so notified Grim Logging, plaintiff did not notify defendant, as Grim Logging's guarantor, of the assignment.[2]

---

[2] In its brief, plaintiff asserts that there is "no evidence in the record" to support defendant's assertion that plaintiff failed to notify defendant of the assignment of the contract. To the contrary, defendant's affidavit in support of his motion for summary judgment directly stated that he received no such notice. Plaintiff, for

Nor did defendant learn of the assignment through some other means. At the time of Hance Oil's sale of Grim Logging's account to plaintiff and until 2001, defendant's primary work responsibilities included overseeing Grim Logging's on-site logging operations and dealing with logging customers. Defendant did not work in Grim Logging's business office or have responsibility for the company's financial operations, although he occasionally undertook certain of those responsibilities. For example, defendant would sign checks if he was available to do so and his father, his brother, or an employee with check-writing authority was not available. Due to the nature and scope of defendant's duties at Grim Logging, however, he was not involved in tracking or paying suppliers. Consequently, until the events that gave rise to this proceeding, defendant was not aware that Hance Oil had sold its assets to plaintiff, including the Grim Logging account, and defendant did not know that he was potentially a guarantor for any fuel purchased from plaintiff.

In August 2001, defendant discovered that the company was in financial peril because of an employee's theft of company funds. After that discovery, defendant began working on financial matters in the office in an effort to keep the company solvent by paying creditors and investing personal assets in the company. Simultaneously, defendant took steps to insulate himself from potential personal liability on those accounts for which he was a personal guarantor. For example, defendant had personally guaranteed Grim Logging's debts to Valley Oil, another of Grim Logging's fuel providers. To protect himself from personal liability on that guaranty, defendant and the other principals in Grim Logging pledged assets of the company to Valley Oil in an amount approximately equal to the balance owed, thus covering the company's obligation to that creditor.

Meanwhile, Grim Logging continued to struggle financially. In early 2002, Grim Logging became delinquent

---

its part, did not submit any evidence to refute defendant's evidence. Plaintiff merely provided an affidavit that stated, upon "knowledge, information and belief" that it had notified "each and every Hance Oil customer[ ]" that it had purchased Hance Oil's assets. At most, that assertion provided some evidence that Grim Logging, plaintiff's customer, was so notified. It did nothing to contradict defendant's affidavit that no notice was provided to *him*.

in its account with plaintiff. In April 2002, plaintiff brought an action against Grim Logging and defendant to recover the amount due for diesel fuel that it had sold to Grim Logging. One week later Grim Logging filed for bankruptcy protection. The bankruptcy filing automatically stayed the proceeding as against Grim Logging. Plaintiff therefore pursued the action solely against defendant, as the guarantor of the debt.

As noted, before trial the trial court granted plaintiff's motion for summary judgment and denied that of defendant. Relying on *Nike, Inc. v. Spencer,* 75 Or App 362, 707 P2d 589, *rev den,* 300 Or 451 (1985), the trial court concluded that a guarantor is released from liability if "there is a material change to the underlying agreement" and that, if a "change does not increase the risk [to] the guarantor, the guarantor is not released from liability." The court determined that, in this case, "the risk to the guarantor was not increased or changed in any way. Grim Logging and [defendant] continued to receive and use products. The only change being the name of the supplier and successor in interest to Hance Oil." Because there were no disputes of material fact presented by the summary judgment record, the court concluded that defendant was liable on the debt as a matter of law and awarded damages to plaintiff in the amount outstanding on the account. The trial court also awarded plaintiff attorney fees.

Defendant's first assignment of error challenges the trial court's ruling on the cross-motions for summary judgment. In support of that challenge, defendant first argues that the trial court misunderstood the law that applies to the modification of a contract containing a personal guaranty. Relying on an 1892 case, defendant contends that, in the absence of language permitting his guaranty to be assigned to a third party, we must conclude that the guaranty was unassignable *per se,* with the result that the assignment from Hance Oil to plaintiff discharged him from his obligation. *See Staver & Walker v. Locke,* 22 Or 519, 524, 30 P 497 (1892) (In "determining the liability of a surety or a guarantor, it must be remembered that he is a favorite of the law, and has the right to stand upon the strict terms of his obligation, when such terms are ascertained[.]").

Defendant's position, however, overlooks the fact that the law in this area has evolved since 1892. We need not trace that full evolution. It is enough to observe that, in *Equitable Savings & Loan v. Jones*, 268 Or 487, 491-92, 522 P2d 217 (1974), the Oregon Supreme Court expressly disavowed the mechanical approach by which "a surety is discharged by *any* alteration of the contract." (Emphasis added.) Instead, the court endorsed the "modern rule," which discharges a personal guarantor or other surety only when the change to a contract is "material." *Id.* at 491. Moreover, as the court observed, the rule is even more demanding in the case of a compensated guarantor. In such a circumstance, it is not enough that there be a material alteration of the contract. Rather, the change must be "actually or potentially" detrimental to the surety. *Id.* at 492. In support of that rule, the court cited *Restatement of Security* section 128 (1941), which states, in part:

> "Where without the surety's consent, the principal and the creditor modify their contract otherwise than by extension of time of payment
>
> "(a)    the surety, other than a compensated surety, is discharged unless the modification is of a sort that can only be beneficial to the surety, and
>
> "(b)    the compensated surety is
>
> "(i)    discharged if the modification materially increases his risk[.]"

*Id.* at 492 n 6; *see also Lloyd Corporation v. O'Connor*, 258 Or 33, 37-38, 479 P2d 744 (1971) (similarly citing and applying section 128 of *Restatement*); *Nike, Inc.*, 75 Or App at 368-69 (rejecting the argument that any change to a contract of guaranty discharges the guarantor and holding, instead, that such a change must be material and must increase the risk to the guarantor).[3]

---

[3] Defendant urges that the trial court's reliance on *Nike, Inc.*, was misplaced because the analysis in that case was based on statutes governing the legal rights and obligations that arise following the merger of a corporation with its subsidiary corporation, not on principles of common law. To the contrary, our decision in *Nike, Inc.*, expressly addressed the defendants' argument that, under common-law principles, the assignment of a guaranty agreement to a third party automatically discharged the guarantor. 75 Or App at 368-70. We rejected the defendants'

■ Under those settled authorities, in order to determine whether a guarantor or other surety is discharged by alteration of the underlying contractual obligation, a court must first ask whether the guarantor consented to the modification. If so, the guarantor is not discharged. If not, the court must determine whether the guarantor is an uncompensated or compensated surety. If the guarantor is uncompensated, a change to the guaranteed contract discharges the guarantor if the change is material, as long as the change is not one that could inure only to the guarantor's benefit.[4] If, on the other hand, the guarantor is compensated, an alteration to the contract discharges the guarantor only if it materially increases the guarantor's risk on the contract.[5]

On those questions, the parties first debate whether the summary judgment record permits a conclusion that defendant consented to Hance Oil's assignment of its contract to plaintiff. Defendant relies on the evidence that he was unaware of the assignment and, as a result, could not have consented to it. Plaintiff identifies no evidence to the contrary. Instead, citing *Equitable Savings & Loan*, plaintiff contends that, due to defendant's position as a "principal in a closely held corporation," defendant is "presumed to have consented to the assignment."

*Equitable Savings & Loan*, however, does not stand for that proposition. In that case, the defendants guaranteed

---

common-law arguments in that regard before turning to whether, under the statutes pertaining to corporate mergers, a surviving corporation was entitled to enforce a guaranty in favor of the merged corporate entity. *Id.* at 369.

[4] As an example, the *Restatement* cites a hypothetical change to the contract pursuant to which the rent for the lease of a store is reduced from $300 a month to $250 a month. In such a circumstance, the modification reduces the guarantor's financial exposure and is necessarily beneficial to the surety. *Restatement* at § 128 comment e, illustration 6. It therefore would make no sense to discharge the guarantor, even though under the old rule that would be the consequence of such a change.

[5] *Restatement (Third) Suretyship and Guaranty* § 41 (1996) has superseded *Restatement of Security* § 128 and appears to give less protection to the guarantor, primarily by eliminating the distinction between compensated and uncompensated guarantors. Beyond that, as pertinent to this case, the circumstances in which a guarantor is discharged are substantially the same. *See Restatement (Third)* at § 41 (stating that a guarantor is discharged by a contractual modification if the modification "creates a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed pursuant to the transaction prior to modification").

a loan made to a reorganization trustee who, when the guaranty was made, was acting under the court's authority pursuant to a bankruptcy reorganization. 268 Or at 497-99. The court did not hold that the defendants consented to the bankruptcy court's later alteration of the contract. Rather, the court held that a guarantor in such a circumstance would not be discharged if the alterations were of a kind that are normal in a bankruptcy proceeding. *Id.* at 503. As the court put it, a guarantor "of a reorganization trustee may be held to his obligation though the court may make alterations which materially increase the surety's risk." *Id.* at 502. In other words, in the context of bankruptcy proceedings, a guarantor is not discharged by a material change to the agreement that the guarantor secures, even those that are nonconsensual and that increase the guarantor's risk, as long as the changes are judicially imposed and are of a kind that ordinarily occur in bankruptcy proceedings. No similar circumstances are involved in this case.

We therefore agree with defendant that the only conclusion that the summary judgment record supports is that defendant did not consent to the assignment of his personal guaranty of the Hance Oil contract to plaintiff. The next question, then, is whether defendant was an uncompensated or compensated guarantor.

An uncompensated guarantor is one who gratuitously undertakes the responsibilities of guarantor "for the sole purpose of helping another." *See Equitable Savings & Loan*, 268 Or at 492. Traditionally, compensated guarantors were only those who were engaged in the surety business. *Id.* at n 5. But, consistently with modern authorities, the Oregon Supreme Court takes a more expansive view of who qualifies as a compensated guarantor. Included in that category is any guarantor who is "serving for compensation," *Lloyd Corporation*, 258 Or at 36, as well as "hybrid" guarantors—*i.e.*, guarantors who are "not compensated but neither [are they] acting as such for the sole purpose of helping another," *Equitable Savings & Loan*, 268 Or at 492.

Defendant argues that, because he did not receive "any consideration in return for his guaranty," he was an uncompensated guarantor. We disagree. A compensated

guarantor includes a guarantor who acts as the president of the guaranteed company, *see Nike, Inc.*, 75 Or App at 369, as well as one who undertakes the obligation in order to further his own business interests, *Equitable Savings & Loan*, 268 Or at 492. The summary judgment record in this case establishes, without dispute, that defendant has a significant self-interest in Grim Logging's business success. As earlier described, defendant is a one-third owner and officer of what is, in effect, a closely held family business. Defendant undertook the guaranty of Grim Logging's agreement with Hance Oil "for the purpose of obtaining credit" for Grim Logging's purchase of diesel fuel necessary for the company's daily logging operations. Given defendant's position in the company, Grim Logging's ability to obtain an uninterrupted supply of fuel for its logging operations was plainly in defendant's interest as a one-third owner of the company. Under those circumstances, defendant cannot reasonably be viewed as acting purely gratuitously—*i.e.*, "for the sole purpose of helping another"—rather than in his personal interest and the interest of the company that he partially owns. As a matter of law, defendant was a compensated guarantor.[6]

■■ The remaining question is whether the modification of the agreement with Hance Oil materially increased defendant's risk. A modification materially increases a guarantor's risk when a " 'careful and prudent person undertaking the

---

[6] Other authorities are generally in accord with the proposition that a principal of a corporation who guarantees the corporation's debt qualifies as a compensated guarantor. *See, e.g.*, *McIntyre Square Associates v. Evans*, 827 A2d 446, 452 n 8 (Pa Super Ct 2003) (concluding that guarantors were compensated due to their status as officers and owners of debtor company at time of guaranty); *Old Nat. Bank of Wash. v. Seattle Smashers*, 36 Wash App 688, 693, 676 P2d 1034, 1036 (1984) (as stockholders and directors of a corporation, the guarantors were in a position to benefit economically by the bank's extension of credit to the corporation; therefore, they were compensated guarantors); *Metro. Federal Sav. & Loan Ass'n v. Adams*, 356 NW2d 415, 419-20 (Minn Ct App 1984) (defendants were not gratuitous guarantors where they "had a definite personal interest in the financial success of [the] partnership" for which they acted as sureties even though none of the defendants was compensated); *Gellis v. S. Gellis & Co., Inc.*, 322 A2d 287, 291 (Del Ch 1974), *aff'd*, 339 A2d 64 (Del Supr 1975) (concluding that shareholders, who were also officers and directors of the guaranteed company, who pledged their stock to secure the company's debt were compensated sureties); Gary L. Monserud, *Interested Sureties and the Restatement of Suretyship: An Argument Against Tender Treatment*, 15 Hamline L Rev 247, 281-86 (1992) (discussing at length the treatment of shareholder-sureties as being compensated sureties in cases leading up to the first *Restatement*, and the first *Restatement*'s rejection of that approach).

risk would have regarded [the modification] as substantially increasing the chances of loss.' " *Lloyd Corporation*, 258 Or at 37 (quoting *Young v. American Bonding Co.*, 228 Pa 373, 380-81, 77 A 623, 626 (1910)). The risk to the guarantor must be either actually or potentially detrimental. *Equitable Savings & Loan*, 268 Or at 492. When a modification deprives a guarantor of the remedy to proceed against the principal debtor to protect the guarantor's personal interest, the modification materially increases the guarantor's risk. *See Marshall-Wells Co. v. Tenney et al.*, 118 Or 373, 393-95, 244 P 84 (1926).

Whether the guarantor's risk is materially increased by a particular modification ultimately will turn on the particular facts of each case. *See id.* at 386 (in determining whether the guarantor's risk was materially increased, it is necessary for the court "to notice as nearly as we can how it might work out, and how it did work out, as far as affecting the obligation of this guarantor"). Here, two undisputed facts combine to establish a material increase in defendant's risk as a result of the assignment of the contract from Hance Oil to plaintiff.

The first is the nature of the modification. Fundamentally, the assignment changed the principal parties to the contract, which is undeniably material. But that change, in and of itself, would not have *increased defendant's risk* on the contract if defendant had been aware of the change.

The problem here, however, is that defendant was not given notice of the assignment and did not otherwise acquire knowledge of it. That fact, combined with the assignment, operated to increase defendant's risk on the contract by preventing defendant from protecting himself from personal liability on the contract. Defendant knew that he was the guarantor on the Hance Oil account and thus knew that, if that account became overdue, he could be personally liable for the debt. But defendant, because he did not know of the assignment, did not know that his guaranty on the Hance Oil account secured Grim Logging's debt to plaintiff. Defendant therefore did not know that becoming delinquent on the account to plaintiff would result in his personal liability, and he had no reason to take the steps he took on other accounts to protect himself from liability. For example, as earlier

noted, defendant, by virtue of his position in the company and his relationship with the other principals, was able to cause Grim Logging to pledge sufficient assets to protect himself from liability on the account with Valley Oil. Defendant stated in his affidavit that, if he had known he could be held personally liable for the debt to plaintiff, he would have similarly protected himself from that liability. In that regard, defendant specifically represented that Grim Logging had additional assets "free and clear" that it could have and would have pledged for that purpose. In short, defendant's risk was greater, because his practical ability to protect himself from liability was impaired.

■ The same is true legally. As a guarantor on the account, defendant had a legal right to exoneration—*i.e.*, the right of a surety "upon default of the principal debtor and before payment, to bring proceedings to compel the debtor to perform his obligation[.]" *See Davis v. First Nat. Bank of Albany*, 86 Or 474, 487, 168 P 929 (1917) (applying the right of exoneration between cosureties prior to paying the obligation); *see also Restatement (Third)* § 18 ("Suretyship status gives the secondary obligor recourse against the principal obligor to cause the principal obligor to perform the underlying obligation" including "enforcement of the principal obligor's duty of performance[.]"). Even apart from defendant's practical ability to cause Grim Logging to pledge sufficient assets to plaintiff as collateral for its debt, he had the legal right to pursue an action to require Grim Logging to cover the debt. The assignment of the account, without notice to him or his actual or constructive awareness, precluded him from exercising his legal rights in that regard. Necessarily, his risk was greater as a result. Under those facts, defendant was discharged as guarantor as a matter of law. *See Marshall-Wells Co.*, 118 Or at 393-95 (surety was discharged from contractual obligation as a matter of law where the modification of the contract had the effect of preventing the surety from protecting his interests). We therefore conclude that the trial court erred in granting summary judgment for plaintiff and denying defendant's cross-motion for summary judgment.

Because plaintiff was not entitled to summary judgment, the award of attorney fees and costs to plaintiff necessarily must be reversed as well. *Vento v. Versatile Logic*

*Systems Corp.*, 167 Or App 272, 279, 3 P3d 176 (2000). Defendant asks us not only to reverse the award to plaintiff but to remand the case with instructions to award defendant his reasonable attorney fees pursuant to ORS 20.097. Plaintiff's objection to that request is loosely focused. It appears that plaintiff argues that defendant is not entitled to attorney fees because he waived any right to fees under ORS 20.097 by not adequately pleading such an entitlement.[7] We disagree.

In defendant's answer to plaintiff's complaint and in his motion for summary judgment, he claimed an entitlement to attorney fees under the fee provision in the contract if he prevailed. In defendant's reply in support of his motion for summary judgment, defendant relied on ORS 20.097 as a basis for his entitlement to attorney fees. Defendant's initial pleading set forth the material facts that would entitle him to an award of attorney fees under ORS 20.097—*viz.*, that plaintiff, as assignee, would be liable to defendant if defendant prevailed on the contract claim. All that was lacking was a specification of the statutory basis for the award. Plaintiff does not argue that he was not fairly alerted to the fact that defendant would seek attorney fees. Nor does plaintiff identify any prejudice from defendant's failure to cite the statute initially. Plaintiff's objection therefore is without merit. *See Page and Page,* 103 Or App 431, 434, 797 P2d 408 (1990) ("It is not necessary to specify the statutory basis of a request for fees when the facts asserted would provide a basis for an award of fees, the parties have fairly been alerted that attorney fees would be sought and no prejudice would result.").

Reversed and remanded with instructions to enter summary judgment for and award reasonable attorney fees and costs to defendant Robert Grim.

---

[7] ORS 20.097(1) provides:

"In any action or suit on a contract by an assignee of any right under that contract, the maker of that contract and the plaintiff in the action or suit on that contract shall be severally liable for any attorney fees and costs that may be awarded to the defendant in the action."