Argued and submitted December 7, 2006, reversed and remanded; supplemental
judgment for attorney fees vacated July 25, 2007

VISION REALTY, INC.,
dba Coldwell Banker Morris Real Estate,
*Plaintiff-Appellant,*

*v.*

Jack L. KOHLER, II,
*Defendant-Respondent.*

Deschutes County Circuit Court
04CV0133MA; A130602

164 P3d 330

Stan Austin argued the cause for appellant. With him on the briefs were Gregory P. Lynch and Lynch, Austin, Wilson, Hill, LLP.

Gerald A. Martin argued the cause for respondent. With him on the brief was Francis Hansen & Martin LLP.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum,* Judges.

ARMSTRONG, J.

---

* Rosenblum, J., *vice* Ceniceros, S. J.

### ARMSTRONG, J.

Plaintiff appeals a judgment for defendant in a breach of contract action on a real estate listing agreement. Plaintiff assigns error to the trial court's grant of summary judgment to defendant and its denial of plaintiff's cross-motion for summary judgment. Plaintiff also appeals a supplemental judgment that awarded attorney fees to defendant. We conclude that the trial court erred in granting defendant's motion for summary judgment and awarding attorney fees, but that it correctly denied plaintiff's cross-motion for summary judgment. Accordingly, we reverse and remand.

■ On review of cross-motions for summary judgment, we examine whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law. *Atlantic Richfield Co. v. Greene*, 100 Or App 16, 19, 784 P2d 442 (1989), *rev den*, 309 Or 698 (1990).

The following facts are undisputed. Defendant owns commercial property in Bend. In late 2001, defendant discussed with plaintiff a possible listing of the property for lease. Plaintiff and defendant signed a "real estate employment contract" on January 15, 2002. The language of the agreement gave plaintiff the exclusive right to market the property to potential lessees. The parties agreed that the property would likely rent for $1.20 per square foot. The terms included a six percent commission to plaintiff if a lease was completed with a party introduced to the property by plaintiff or to any person who was shown the property within 60 days following the expiration of the agreement. Defendant also agreed therein to "fully cooperate" to bring about a lease. The agreement was for a six-month term and was extended pursuant to a change order form signed by the parties on October 2, 2002, which extended the agreement to December 31, 2002.

In October 2002, plaintiff was contacted by Larry Schneller, who wished to lease the property for a Blimpies franchise. After driving by the property at plaintiff's direction, Schneller contacted plaintiff and expressed interest in learning more about it. Plaintiff then took Schneller to the

property to meet with defendant, and the three discussed the suitability of the property for the franchise. Within a few weeks, Schneller notified plaintiff that he wanted to lease the property and told him that the Blimpies organization required a ten-year lease.

Plaintiff then prepared a letter of intent to lease the property, which defendant and Schneller signed in late October 2002. The letter also was signed by a representative of Blimpies. The letter of intent contained all of the basic terms of a lease, including a ten-year term, lease commencement date, possession date, and rate. It was agreed that plaintiff, working with defendant's attorney, would prepare a formal lease and provide it to Schneller and Blimpies for final approval. Meanwhile, Blimpies approved the location of the property for a franchise.

Plaintiff provided a standard lease and made changes to it at the direction of defendant's attorney. Plaintiff and defendant's attorney met to continue editing the lease. All parties knew at that point that the lease term would be ten years. After the lease was finalized, defendant asked to meet with plaintiff and plaintiff's broker in early December 2002. At that meeting, defendant said that he could not afford to pay the commission that he would owe plaintiff under the lease. Plaintiff offered a payment plan so that defendant could pay a commission on a five-year lease immediately and then pay for a second five years only if the tenant continued to occupy the space after five years. Plaintiff called defendant two days later, and defendant told plaintiff that it was going to work directly with Schneller and that plaintiff should direct further communications to defendant's attorney. Defendant's attorney told plaintiff to cease communications with the Blimpies representatives.

Meanwhile, although Schneller was ready to sign the lease, he soon learned that a formal document was not forthcoming and that there was a dispute about the commission. Although Schneller needed a ten-year lease for the franchise, defendant asked him if he would be willing to settle for a five-year lease with a five-year option in order to reduce the commission obligation. Schneller then agreed to the five-year term so that he could lease the facility and begin operating.

Even after that oral agreement was reached, a lease was not forthcoming. Schneller threatened to withdraw from the deal on three separate occasions over the next few months. After Schneller's third threat to withdraw, defendant provided him with the five-year lease and both signed it in April 2003. That was after the expiration of the listing agreement between plaintiff and defendant and after the 60-day window provided in that agreement.

Thereafter, defendant refused to pay a six percent commission to plaintiff, and in March 2004, plaintiff filed a complaint against defendant alleging breach of contract and requesting damages in the amount of $27,780, plus interest and attorney fees. Both parties filed motions for summary judgment. Plaintiff argued in its cross-motion for summary judgment that it was entitled to a six percent commission on a ten-year lease or, in the alternative, a six percent commission on the five-year lease that was eventually signed. The trial court granted defendant's motion for summary judgment, concluding that, because the contract did not provide for a specific price term by which defendant was required to lease his property to any prospective tenant, it lacked an essential term and, hence, was unenforceable. The trial court also concluded that the failure to execute a lease for a particular term before the expiration of the contract was a result of that lack of specificity and not a result of any wrongful act by defendant.

On appeal, plaintiff contends that the trial court erred in granting defendant's motion for summary judgment and in denying its cross-motion for summary judgment. Plaintiff argues that the listing agreement was sufficiently definite to be enforceable and that facts in the record establish as a matter of law that defendant breached the agreement by not paying a commission. Plaintiff contends that it is owed a six percent commission on a ten-year lease or, in the alternative, the five-year lease that was entered into. Defendant contends that the trial court was correct that there was no enforceable agreement between the parties and that, even if there was, it had not been reduced to writing and defendant is not bound.

As a general rule, before there can be a valid contract, there must be a meeting of the minds as to all of its essential terms. *Phillips v. Johnson*, 266 Or 544, 555, 514 P2d 1337 (1973). In a real estate listing agreement, the essential terms include an adequate description of the property sufficient for identification and a reasonably certain expression of the amount of a commission to be paid. *See* ORS 41.580(1)(g); *Weineke Properties, Inc. v. Thiessen*, 94 Or App 306, 310, 765 P2d 815 (1988), *rev den*, 307 Or 514 (1989) (concluding that fee agreement stating that amount of commission was six percent of final sales price was reasonably certain, and trial court properly considered intent of parties in construing the agreement to provide that the defendants would pay the plaintiff six percent of whatever the defendants and buyer finally agreed upon).

Here, the listing agreement identified the property and the basis upon which to calculate the commission to be paid. Those terms were sufficient to establish an enforceable listing agreement. Both the trial court and defendant confuse the relevant agreement. The agreement at issue is the listing agreement between plaintiff and defendant, not the lease that defendant would enter into with a lessee. The failure to include the terms of the lease in the listing agreement does not affect the validity or the enforceability of the listing agreement. It is clear from the record that the parties agreed that the final commission would be calculated by the length and price of a final lease entered into by defendant and a lessee. The October 2002 letter of intent signed by defendant and the eventual lessee clearly stated that the lease term was to be ten years and specified a lease rate. Therefore, the trial court erred in granting defendant's summary judgment motion on the ground that the contract was too indefinite to enforce.

We now turn to the trial court's denial of plaintiff's cross-motion for summary judgment. Plaintiff assigns error to that denial, and we conclude that the trial court was correct in denying the motion. Plaintiff argues on appeal that it is owed a six percent commission on the ten-year lease that Schneller was prepared to but did not enter into with defendant because the failure of the contract including the ten-year term resulted from a wrongful act of defendant. Plaintiff

argues in the alternative that it is entitled to a six percent commission on the five-year lease that Schneller and defendant did eventually enter into, the term of the eventual lease.

■ Both parties acknowledged at oral argument that a condition of the listing agreement, namely the signing of a lease by defendant, did not occur during the duration of the listing agreement. "A condition precedent is one that must be performed before liability arises on the promise that the condition qualifies." *Falkenstein v. Pishioneri*, 80 Or App 203, 206, 720 P2d 1341 (1986). Defendant contends that the failure of that condition means that he did not breach the listing agreement by failing to pay a commission and that the trial court was therefore correct in its result.

Although the parties agree that the condition was not fulfilled within the time period of the listing agreement, it is disputed whether the condition was not fulfilled because defendant breached his contractual duty under the listing agreement to "fully cooperate" to bring about a lease. Because that material fact is disputed, the trial court did not err in denying plaintiff's cross-motion for summary judgment.

Finally, plaintiff assigns error to the trial court's granting of defendant's request for attorney fees. Because we reverse the trial court's grant of summary judgment to defendant, the award of attorney fees is vacated.

Reversed and remanded; supplemental judgment for attorney fees vacated.