Argued and submitted October 3, reversed and remanded with instructions to enter judgment for defendant Western Surety Company December 29, 2011

## BRASHER'S CASCADE AUTO AUCTION, INC.,
*Plaintiff-Respondent,*

*v.*

## Guillermo E. LEON,
dba Leon's Auto Sales,
*Defendant,*

*and*

## WESTERN SURETY COMPANY,
*Defendant-Appellant.*

Multnomah County Circuit Court
090101376; A144938

270 P3d 330

Vicki M. Smith argued the cause for appellant. With her on the briefs were Pamela J. Stendahl, and Bodyfelt Mount LLP.

Robert C. Dougherty argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Brewer, Chief Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

This case arose after a vehicle dealer failed to pay for vehicles that he had purchased on credit from two wholesale auto-auction businesses. Plaintiff, representing the auctions, sued both the vehicle dealer, defendant Guillermo E. Leon dba Leon's Auto Sales (Leon), and the surety on the dealer's bond, defendant Western Surety Company (Western). Plaintiff contended that Leon's failure to pay was a breach of contract; plaintiff also argued that it was entitled to recover on the bond because it was harmed by Leon's actions. The trial court entered a default judgment against Leon on the contract claim, which is not at issue on appeal. Plaintiff and Western then filed cross-motions for summary judgment on the bond issue. The trial court granted plaintiff's motion and denied Western's, concluding that Leon had violated two provisions of the vehicle code, ORS 822.045(1)(j) and (k), entitling plaintiff to recover on the bond pursuant to ORS 822.030(2). On appeal, Western argues that plaintiff was not entitled to recover on the bond. For the following reasons, we agree. Accordingly, we reverse and remand.

"On review of cross-motions for summary judgment, we examine whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law." *Vision Realty, Inc. v. Kohler*, 214 Or App 220, 222, 164 P3d 330 (2007). Here, the material facts are undisputed, and, as explained below, the decisive question is one of statutory construction. Plaintiff, an auto-auction company, asserts claims on behalf of itself, Brasher's Cascade Auto Auction, Inc. (Brasher's Cascade), and as assignee of another auto-auction company, Brasher's Northwest Auto Auction, Inc. (Brasher's Northwest). From June through September 2008, defendant Leon entered into what are known as "float agreements" that allowed Leon to buy vehicles on credit from both auctions. The float agreements provided that Leon would give the selling auction a signed check for each vehicle that he purchased on credit. That auction, in turn, would hold the check until (1) Leon requested the vehicle's title, (2) the float period expired, or (3) Leon subsequently sold the vehicle, whichever occurred first. The auction also would keep the vehicle's title as security until it cashed the corresponding check from Leon; the auction then

would release the title so that Leon could timely pass title to the vehicle's purchaser.

This appeal involves 15 vehicles that Leon purchased from Brasher's Cascade and Brasher's Northwest during the term of the relevant float agreements. Leon delivered a check for each vehicle on the date of purchase. However, when the auctions attempted to cash those checks after Leon sold the vehicles, the checks all were returned for nonsufficient funds. Brasher's Northwest nonetheless provided clean title to Leon for one vehicle. The Department of Motor Vehicles (DMV) soon suspended Leon from operation, and Leon subsequently went out of business. The auctions then provided two other titles directly to the vehicles' ultimate purchasers and passed the remaining titles to the DMV.

Plaintiff then brought this action, asserting, with respect to Western, a right to recover damages on the bond under ORS 822.030(2). That statute grants any person a right of recovery against the surety on a vehicle dealer's bond "if the person suffers any loss or damage by reason of the vehicle dealer's fraud, fraudulent representations or violation of provisions of the vehicle code * * *." ORS 822.030(2). Plaintiff asserted that Leon had violated the vehicle code in two ways: first, by failing to satisfy plaintiff's security interests in certain vehicles within 15 days after Leon received title to the vehicles, in violation of ORS 822.045(1)(j)(B); and second, by failing to provide title to the vehicles' ultimate purchasers, in violation of ORS 822.045(1)(k)(A). Plaintiff argued that Leon would have had to pay his debt to plaintiff in order to comply with either of those provisions. Accordingly, plaintiff concluded, it had suffered damages "by reason of" Leon's noncompliance and was entitled to recover on the bond under ORS 822.030(2). The trial court agreed and entered judgment in plaintiff's favor.

On appeal, Western first assigns error to the trial court's conclusion that Leon committed the offense outlined in ORS 822.045(1)(j)(B) by failing to pay plaintiff for the vehicles.[1] ORS 822.045(1)(j) provides, in part:

---

[1] We note that Western's assignments of error inappropriately challenge the trial court's reasons for granting plaintiff's summary judgment motion and denying Western's, instead of challenging those rulings themselves. "Assignments of

"Except as provided in subsection (2) of this section, a vehicle dealer commits the offense of failure to provide clear title if:

"* * * * *

"(B) Within 15 days of receiving clear title to a vehicle or camper from another dealer, the purchasing dealer fails to satisfy the interest of the selling dealer."

Subsection (2) of that statute creates an exception to the offense described above:

"A dealer shall not be considered to have committed the offense described in subsection (1)(j) of this section if the dealer fails to satisfy an interest in a vehicle or camper that arises from an inventory financing security interest for which the dealer is the debtor."

Western contends that the subsection (2) exception applies in this case. It notes that plaintiff retained security interests in the unpaid-for vehicles under the "float agreements" to which plaintiff and Leon were parties. Western asserts that those security interests were "inventory financing security interest[s]" as that term is used in ORS 822.045(2). Because the exception outlined in that statute applies here, Western argues, Leon cannot be considered to have committed the offense described in ORS 822.045(1)(j)(B).[2]

_____

error * * * are to be directed against rulings by the trial court, not against components of the trial court's reasoning or analysis that underlie that ruling." *Marc Nelson Oil Products, Inc. v. Grim Logging Co.*, 199 Or App 73, 75 n 1, 110 P3d 120, *adh'd to as modified on recons*, 200 Or App 239, 115 P3d 935 (2005). *See* ORAP 5.45(3) ("Each assignment of error shall identify precisely the legal, procedural, factual, or other ruling that is being challenged."). However, the parties' briefs make clear what rulings are at issue on appeal, and Western's noncompliance with ORAP 5.45(3) has not impeded our review of those rulings.

[2] Alternatively, Western contends that, even if ORS 822.045(2) is inapplicable, a dealer can violate ORS 822.045(1)(j)(B) only after "receiving clear title to a vehicle." Here, Leon received clear title to only one vehicle. Thus, Western argues, if plaintiff was entitled to any relief on the bond, that relief should not have exceeded plaintiff's losses on the single vehicle to which Leon received title. Plaintiff responds that the trial court correctly granted it relief on the bond for its losses on all 15 vehicles, because, as plaintiff interprets ORS 822.045(1)(j)(B), clear title to each vehicle was "received" by Leon when plaintiff provided the titles either directly to Leon, to Leon's customers, or to the DMV on Leon's behalf. Given our dispositive conclusion that the ORS 822.045(2) exception applies, we do not reach the question of when Leon "received" title to the vehicles for purposes of ORS 822.045(1)(j)(B).

Plaintiff responds that to interpret the phrase "inventory financing security interest" as Western suggests would be incompatible with the legislature's intent. Rather, plaintiff argues, the legislature meant ORS 822.045(2) to apply only to security interests arising out of a narrow subset of financing agreements known as either "flooring agreements" or "flooring contracts." Because Leon's agreements with plaintiff were not "flooring agreements," plaintiff concludes that those agreements did not give rise to interests that fall within the ORS 822.045(2) exception.[3]

We resolve the parties' dispute about the meaning of the statutory term "inventory financing security interest" by examining the text and context of ORS 822.045(2), also considering the legislative history that the parties have proffered and giving that history such weight, if any, as it appears to merit. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009).

The phrase "inventory financing security interest" is not statutorily defined. However, we readily discern its meaning by reviewing the plain, natural, and ordinary meaning of its component terms, *see State v. Bea*, 318 Or 220, 225, 864 P2d 854 (1993), and by considering any pertinent definitions included in the general definitions section of the Oregon Vehicle Code, ORS chapter 801, which governs the construction of ORS 822.045(2). ORS 801.100 ("Except where the context requires otherwise, the definitions given in the vehicle code govern its construction."). The first word in the phrase— "inventory"—commonly is understood to mean "the quantity of goods or materials on hand : STOCK, SUPPLY." *Webster's Third New Int'l Dictionary* 1189 (unabridged ed 2002) (uppercase in original). When used as a verb, "financing" ordinarily means "to raise or provide funds or capital for"[;] "to provide with necessary funds in order to achieve a desired end"[;] "to sell on credit : to supply on credit * * * : to secure needed funds or capital * * *." *Webster's* at 851 (definition of the verb, "finance"). Finally, the Vehicle Code defines a "security interest" as "an interest in a vehicle reserved or created by agreement and which secures payment or performance of

---

[3] We explain the parameters of "flooring agreements" later in this opinion, 247 Or App at 541.

an obligation as more particularly defined by ORS 71.2010(2)(ii)." ORS 801.465. That referenced statute, in turn, defines "security interest" for purposes of the Uniform Commercial Code. ORS 71.1020 (relating to the scope of general definitions provided in ORS 71.2010). Taken together, those definitions suggest that an "inventory financing security interest" arises, for purposes of ORS 822.045(2), when one person finances a vehicle dealer's acquisition of vehicles for the dealer's stock (either by selling the vehicles to the dealer on credit or by otherwise funding the dealer's acquisition of them), reserving or creating an interest in those vehicles to secure the dealer's obligation to pay its associated debt to the financing person.

Nonetheless, plaintiff contends that the legislature intended the phrase "inventory financing security agreement" to have a more narrow meaning. Plaintiff relies on legislative history, specifically written testimony submitted by the Oregon Auto Dealers Association (OADA) that supported creating the exception now codified in ORS 822.045(2). The testimony explained that the exception would cover certain financing agreements known within the automotive industry as "flooring contracts," and it described those contracts as follows:

> "With a flooring contract, a financial institution or auto maker owns vehicles in a dealer's inventory. A dealer pays interest on a vehicle until it is sold. Then, the dealer pays the principle once the financing of a purchase is completed."

Plaintiff asserts that it is neither an auto manufacturer nor a financial institution. It also contends that the security interests granted by Leon in this case were not equivalent to those that arise under the kind of "flooring contract" discussed in the OADA's testimony. From those premises, plaintiff concludes that the legislature did not intend the ORS 822.045(2) "inventory financing security interest" exception to encompass the type of security interest at issue in this case.

We disagree. Although the OADA's written testimony reflects its specific interest in exempting flooring contracts from ORS 822.045(1)(j), the testimony does not suggest that OADA advocated an exception that would apply *only* to that single type of financing agreement. More significantly,

nothing in the statutory text indicates that the legislature intended the term "inventory financing security interest" to encompass only interests that are created through flooring agreements. "[W]hatever the legislative history might show about the legislature's intentions, those intentions must be reflected in actual statutory wording that, when reasonably construed, is capable of carrying out such an intention." *State v. Patton*, 237 Or App 46, 53, 238 P3d 439 (2010), *rev den*, 350 Or 131 (2011). Plaintiff does not contend that the text actually enacted by the legislature reasonably could be construed to apply only to flooring agreements, and we do not discern how that could be so. *See State v. Kelly*, 229 Or App 461, 468, 211 P3d 932, *rev den*, 347 Or 446 (2009) (noting that legislatures often enact "very broadly worded statutes" intended to address more issues than those which precipitated a particular bill). Accordingly, even if we read the legislative history in the same way as plaintiff, we would not conclude that the statutory exemption applies only to flooring agreements.[4]

Here, plaintiff and Leon entered into agreements that allowed plaintiff to reserve interests in multiple vehicles as security for Leon's payment for those vehicles, which he bought on credit under the terms of the float agreements. It is clear to us that each of those float agreements gave rise to an "inventory financing security interest" as that term is used in ORS 822.045(2). Consequently, even if Leon's acts might otherwise have violated ORS 822.045(1)(j)(B), Leon "shall not be considered to have committed [that] offense." ORS 822.045(2). The trial court erred in reaching a contrary conclusion.

We next consider plaintiff's claim that it was entitled to recover on the bond because Leon violated ORS 822.045(1)(k). That statute provides, in part:

---

[4] Plaintiff also argues that construing the ORS 822.045(2) exception as we do renders ORS 822.045(1)(j)(B) meaningless. We reject that argument without extended discussion, noting only that there may well be situations in which a purchasing dealer "fails to satisfy the interest of [a] selling dealer" within 15 days of receiving title, in violation of ORS 822.045(1)(j)(B), yet the selling dealer's "interest" is not an "inventory financing security interest" within the meaning of ORS 822.045(2).

"Except as provided in subsection (3) of this section, a vehicle dealer commits the offense of failure to furnish certificate of title or application for title if, within 90 calendar days of transfer of any interest in a vehicle or camper by the dealer, the dealer has failed to:

"(A) Furnish the certificate of title or other primary ownership record for the vehicle or camper and any release thereon * * * to the security interest holder next named, if any, otherwise to the lessor or, if none, to the purchaser[.]"

Because Leon could not have timely passed title to the ultimate purchasers as required by ORS 822.045(1)(k) without first paying off plaintiff's interest in the vehicles—thus securing release of the titles from plaintiff—plaintiff argues that it suffered damages under ORS 822.045(1)(k) that are due to Leon's nonpayment. Accordingly, plaintiff concludes, it is entitled to recover on the bond.

Plaintiff's argument overlooks the statutory requirement that a person have been harmed "by reason of" the vehicle dealer's "violations of provisions of the vehicle code." ORS 822.030(2). Leon's alleged violation of ORS 822.045(1)(k) arose when he did not provide certificates of title to the people who ultimately bought the cars that Leon had purchased from plaintiff on credit. Plaintiff suffered no loss "by reason of" Leon's failure to provide title to those purchasers. Rather, any loss plaintiff suffered arose from Leon's failure to pay the debt that he owed plaintiff under the financing agreements. Plaintiff's contrary protestations notwithstanding, Leon's failure to pay that debt cannot be equated to his failure to provide certificates of title to consumers. Indeed, Leon could have violated ORS 822.045(1)(k) by failing to furnish certificates of title to the vehicles' purchasers even if he had fulfilled his monetary obligation to plaintiff. Because Leon's alleged violation of ORS 822.045(1)(k) did not *cause* plaintiff to suffer any loss, plaintiff is not entitled to recover on the bond on the basis of any such violation.

In sum, the undisputed facts in the summary judgment record establish that plaintiff did not suffer loss by reason of Leon having violated either of the vehicle code provisions upon which plaintiff relies. The trial court erred in

denying Western's summary judgment motion and in entering judgment for plaintiff.

Reversed and remanded with instructions to enter judgment for defendant Western Surety Company.