Argued and submitted July 30, 2012, affirmed February 21, petition for review denied July 25, 2013 (353 Or 867)

Royshekka HERRING,
*Plaintiff-Respondent,*

*v.*

AMERICAN MEDICAL RESPONSE
NORTHWEST, INC.,
an Oregon corporation;
and American Medical Response, Inc.,
a Delaware corporation,
*Defendants-Appellants,*

*and*

Lannie HASZARD;
and American Medical Response
Ambulance Service, Inc.,
a Delaware corporation,
*Defendants.*

Multnomah County Circuit Court
071214914; A144168

297 P3d 9

James N. Westwood argued the cause for appellants. With him on the briefs were P.K. Runkles-Pearson and Stoel Rives LLP, and James Dumas, Michael J. Estok, and Lindsay Hart Neil & Weigler.

Mark G. McDougal argued the cause for respondent. With him on the brief were Gregory Kafoury and Kafoury & McDougal.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

After a medical emergency, plaintiff was en route to a hospital in the back of an ambulance operated by defendant American Medical Response Northwest (AMR) when she was sexually abused by one of AMR's employees, a paramedic.[1] She brought this action against AMR alleging, among other things, that she was a "vulnerable person" as defined in ORS 124.100 and that, by permitting the abuse, AMR violated that statute.[2] A jury agreed and awarded plaintiff $500,000 in noneconomic damages. Pursuant to another section of the vulnerable person statute, ORS 124.100(2)(b), the court tripled that amount and entered judgment in favor of plaintiff for $1,500,000. In a supplemental judgment, the court also awarded plaintiff $600,000 in attorney fees. On appeal, defendant raises two arguments. First, it argues that, because plaintiff was not incapacitated for an extended period of time, she was not a "vulnerable person" as that term is defined by statute. Second, it argues that, even if she were a vulnerable person subject to the statute, then the court erred in tripling her noneconomic damages; doing so resulted in an award that exceeded a statutorily mandated $500,000 cap on noneconomic damages, or was excessively punitive, or both. We affirm.

We state the facts in the light most favorable to plaintiff because she received a favorable jury verdict.

---

[1] There were originally four defendants. Only American Medical Response Northwest, Inc., and American Medical Response, Inc., are appellants, and only the former incurred the liability that is at issue in this appeal. Henceforth, "defendant" and "AMR" refer to American Medical Response Northwest, Inc.

[2] ORS 124.100(2) provides:

"A vulnerable person who suffers injury, damage or death by reason of physical abuse or financial abuse may bring an action against any person who has * * * permitted another person to engage in physical or financial abuse. The court shall award the following to a plaintiff who prevails in an action under this section:

"* * * * *

"(b) An amount equal to three times all noneconomic damages, as defined in ORS 31.710, resulting from the physical or financial abuse."

ORS 124.100(5) provides:

"An action may be brought under this section against a person for permitting another person to engage in physical or financial abuse if the person knowingly acts or fails to act under circumstances in which a reasonable person should have known of the physical or financial abuse."

*Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). She awoke one morning with pain, nausea, and bleeding. When she tried to get out of bed, she fainted. Her son called 9-1-1. Emergency personnel from the Portland Fire Bureau arrived and, shortly thereafter, an AMR ambulance with two paramedics followed. The paramedics helped plaintiff, who had regained consciousness, into the ambulance for transport to Legacy Emanuel Hospital. The trip took approximately 15 minutes, during which Haszard, the paramedic who was not driving, touched plaintiff three times in a sexual manner. None of the touches occurred with plaintiff's consent, and she testified that, during at least one of the touching incidents, she was unable to see, move, or speak.

When she arrived at the hospital, plaintiff—visibly upset—reported that she had been sexually abused. A nurse telephoned AMR and relayed that report. The AMR employee who took the call described his reaction as "dumbfounded," because plaintiff's report was "nearly identical" to an earlier report by another female patient regarding sexually abusive behavior by Haszard, the same paramedic. Police were summoned and, two days later, Haszard was arrested. A later investigation revealed at least two earlier incidents of sexual abuse by Haszard, both of which had been reported to AMR.

Plaintiff subsequently brought this action. Her operative complaint contained a battery claim against Haszard; a common-law negligence claim against AMR and its parent corporation; and a claim against AMR and its parent corporation under ORS 124.100. Plaintiff dismissed Haszard before trial. She prevailed on the common-law negligence claim and was awarded $1,750,000 in noneconomic damages. Defendant does not appeal that aspect of the judgment. The court granted AMR's parent corporation a directed verdict on the ORS 124.100 claim, but let that claim against AMR itself go to the jury, which found in favor of plaintiff and awarded her $500,000 in noneconomic damages. The court subsequently granted plaintiff's motion to triple the ORS 124.100 damages as authorized by ORS 124.100(2)(b), set out above. 255 Or

App at 317 n 2. Defendant appeals from the adverse ORS 124.100 judgment, arguing as noted, that the court erred in finding that plaintiff was a "vulnerable person" under the statute and that, if she were, then the court erred in tripling her noneconomic damages award.

For purposes of ORS 124.100 and as relevant to this case, a "vulnerable person" includes an "incapacitated person." ORS 124.100(1)(e)(C). "'Incapacitated' has the meaning given that term in ORS 125.005." ORS 124.100(1)(c). In turn, ORS 125.005—the definition section of the "Protective Proceedings" statute—provides:

> "(5) 'Incapacitated' means a condition in which a person's ability to receive and evaluate information effectively or to communicate decisions is impaired to such an extent that the person presently lacks the capacity to meet the essential requirements for the person's physical health or safety. 'Meeting the essential requirements for physical health and safety' means those actions necessary to provide the health care, food, shelter, clothing, personal hygiene and other care without which serious physical injury or illness is likely to occur."

The record contains constitutionally sufficient evidence to support the jury finding that, at the time of one or more of the sexual touchings, plaintiff lacked the capacity to meet the essential requirements for her physical health and safety; defendant conceded as much at oral argument before this court. Defendant's contention, rather, is that plaintiff was not "incapacitated" because that term does not apply to a person who is only temporarily unable to meet her essential health and safety needs. In support of that argument, defendant makes three points.

First, it maintains that incapacity necessarily involves "severely impaired perception or communication skills," *Schaefer v. Schaefer*, 183 Or App 513, 516-17, 52 P3d 1125 (2002), and that, therefore, an "extreme level of impairment * * * is simply incompatible with the notion of temporary or episodic incapacity." We disagree. Defendant does not explain, and we do not understand, the supposedly inherent nexus between the severity of incapacity and its

duration. In fact, there is none. People completely but briefly lose consciousness in any number of situations.

Second, defendant notes that the vulnerable person definition of "incapacitated" is the same as the definition of that term in ORS 125.005, applicable in "protective proceedings" such as conservatorships and guardianships. The protective proceedings statutes, defendant maintains, are therefore relevant context, and conservatorships and guardianships could not possibly be established for persons who experience only fleeting incapacity. For several reasons, we are not persuaded by this argument. Nothing in the conservatorship or guardianship statutes establishes that they cannot operate on temporarily incapacitated persons. In fact, the statutes establish that they can: The court may terminate a conservatorship or guardianship if the protective order "was made because the protected person was incapacitated, and the protected person is no longer incapacitated." ORS 125.090(2)(b). Defendant's position would thus have to be that "incapacity" can apply to a temporary condition, but not to one that is so temporary that it could not endure for the time necessary to establish a protective order. We find such an interpretation of the term to be unworkable, far-fetched, and unsupported by anything in the statutory text. Further, although we agree that the provisions in the protective proceedings statute are relevant—if remote—context, they are not *as* relevant as the provisions in the vulnerable person statute itself. Those provisions authorize an action based on assault, menacing, reckless endangering, criminal mistreatment, rape, sodomy, unlawful sexual penetration, sexual abuse, and strangulation, ORS 124.105(1)(a) - (i)—almost all of which can be accomplished during a "fleeting" period of a person's impaired ability to protect his or her health and safety.

Third, defendant argues that the legislative history of the vulnerable person statute demonstrates that the legislature intended the statute to protect "longer term vulnerable individuals." Defendant quotes from the testimony of the bill's drafter, "a Bend attorney who specializes in elder law, elder abuse, and estate planning." She testified:

"I would like to point out *** that of the 2200 cases of elder abuse reported in 1993, it is really important to note that most of those cases, the majority of those cases, were committed by relatives of the elder person or incapacitated person or an acquaintance, so this is a person who befriends the elderly person in the community and is taking them to the bank to cash social security checks, all of a sudden moves in with the elderly person and is all of a sudden on a deed or on the title of the elderly person's property. That's the focus of this bill."

Testimony, Senate Committee on Judiciary, SB 943, Mar 23, 1995, Tape 68, Side B, Tape 69, Side A (statement of Lisa Bertalan). That testimony cannot bear the weight that defendant would assign it. Although it certainly supports the idea that the statute protects elderly persons, nothing indicates or implies that it was intended to protect *only* elderly persons. The testimony itself distinguishes between elderly persons and incapacitated persons, as does the statute. *Compare* ORS 124.100(1)(a) (defining "elderly person") and ORS 124.100(1)(c) (defining "incapacitated").

Finally, none of defendant's arguments addresses, much less explains, the import of the word "presently" in the definition of "incapacitated": "'Incapacitated' means a condition in which a person's ability to receive and evaluate information effectively or to communicate decisions is impaired to such an extent that the person *presently* lacks the capacity to meet the essential requirements for the person's physical health or safety." ORS 125.005(5) (emphasis added). It is at least theoretically possible that, in the context of the protective proceedings statute, "presently" refers to the time when the proceeding is before the court. But in the context of the vulnerable person statute, such a construction makes no sense; the vulnerable person statute focuses on an incident of abuse, not a judicial proceeding. Thus, ORS 124.100 plainly establishes that a person is incapacitated if, *while being abused*, her self-protecting ability is significantly impaired. Nothing in the text requires the duration of that impairment to exceed the period during which the abuse occurs. We conclude that, in protecting "incapacitated" persons, ORS 124.100 protects, among others, persons who are only temporarily and fleetingly unable to protect their

own health and safety, from abuse inflicted, at least in part, during that temporary and fleeting period.

In a second assignment of error, defendant challenges the court's decision to triple the noneconomic damages that the jury awarded to plaintiff pursuant to ORS 124.100(2)(b), which provides that the court "shall" award "[a]n amount equal to three times all noneconomic damages, as defined by ORS 31.710, resulting from the physical or financial abuse." According to defendant, that provision must give way in this case to ORS 31.710(1):

> "[I]n any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000."

Plaintiff, on the other hand, relies on the unambiguous language in ORS 124.100(2) *requiring* the court to triple the award of noneconomic damages: "The court *shall* award * * * [a]n amount equal to three times all noneconomic damages." (Emphasis added.) We conclude that plaintiff has the better argument.[3]

We base that conclusion on the plain text of the statute. More fundamentally, the portion of an award under ORS 124.100(2)(b) that results from tripling "all noneconomic damages" is not itself an award of noneconomic damages. Rather, it is an award of "[a]n *amount equal to*

---

[3] In *Lakin v. Senco Products, Inc.*, 329 Or 62, 987 P2d 463 (1999), the Oregon Supreme Court declared that ORS 31.710, then numbered ORS 18.560, violated the guarantee of a jury trial in Article I, section 17, of the Oregon Constitution ("In all civil cases the right of Trial by Jury shall remain inviolate."). The court held that

> "Article I, section 17, guarantees a jury trial in civil actions for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857 and in cases of like nature. In any such case, the trial of all issues of fact must be by jury. The determination of damages in a personal injury case is a question of fact."

*Id.* at 82 (citation omitted). Plaintiff does not argue that the vulnerable person statute is a civil action "of like nature" to a civil action for which the common law provided a jury trial, and that, therefore, the damage cap cannot apply in this case. We do not address those issues.

three times all noneconomic damages, as defined by ORS 31.710," that is, three times the "subjective, nonmonetary losses" experienced by the vulnerable person. ORS 31.710(2)(b).[4] Plaintiff's $1,500,000 award, then, consists of $500,000 in noneconomic damages to compensate her for her "subjective, nonmonetary losses," plus an additional $1,000,000 that is more in the nature of a fine.[5]

Our conclusion is bolstered by the fact that the trebling provision of the vulnerable person statute was added in 2003. Or Laws 2003, ch 211, § 1. At that time, the $500,000 cap for noneconomic damages had been part of Oregon statutory law since 1987. Or Laws 1987, ch 774, § 6. We are unwilling to conclude that the legislature intended to enact a provision that, in many situations, would conflict with a preexisting statute. We conclude that the court did not err in denying defendant's motion to reduce the award of noneconomic damages on the ground that the award violated the cap in ORS 31.710.[6]

Defendant also argues that the $1,000,000 component of the damages awarded under ORS 124.100—the amount in excess of the jury verdict—is the functional equivalent of punitive damages and, as such, it was awarded in violation of certain provisions that apply to punitive damages by virtue of ORS 31.730(1)[7] and the Due Process

---

[4] ORS 31.710(2)(b) provides:

"'Noneconomic damages' means subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment."

[5] Defendant argues that, because the amount is nonremedial, it must be punitive, and, as such, must necessarily trigger some of the procedural and substantive protections associated with punitive damages. We address (and reject) that argument below.

[6] This case does not require us to determine the outcome if a jury were to award a plaintiff in a vulnerable person case noneconomic damages in excess of $500,000.

[7] ORS 31.730(1) provides:

"Punitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others."

Clause of the Fourteenth Amendment to the United States Constitution. As explained below, we disagree.

Defendant's contention is not that plaintiff's award, to the extent that it exceeds the jury's verdict of $500,000, is in fact punitive damages. If that were the case, it would have been incumbent on defendant to argue that plaintiff's complaint did not conform to the requirements for pleading punitive damages.[8] Rather, defendant argues that the award is penal in nature, and it therefore should have triggered the procedural and substantive protections that are provided when punitive damages are awarded. In particular, defendant argues that it was entitled to the heightened evidentiary standard ("clear and convincing evidence") and the elevated *mens rea* requirement ("malice" or "reckless and outrageous indifference to a highly unreasonable risk of harm") established in ORS 31.730(1), as well as judicial review for excessiveness of the award under the Due Process Clause of the Fourteenth Amendment.

Defendant offers no authority (and no argument) for the proposition that damages under ORS 124.100(2)(b) are governed by any heightened evidentiary standard, and we are prohibited from reading one into the statute as drafted by the legislature. ORS 174.010 (judges are not to insert what the legislature has omitted).

In support of the argument that a civil statute with penal consequences must include a heightened *mens rea* requirement, defendant relies primarily on *Holman Transfer Co. v. PNB Telephone Co.*, 287 Or 387, 394, 599 P2d 1115 (1979). In that case, however, the court rejected the argument that, whenever a statute imposed treble damages, a violation could occur only if the violation was "willful, wanton, or malicious"; rather, the court concluded that whether a heightened *mens rea* applied depended on whether the legislature that enacted the particular statute intended to impose such limits. *Id.* at 394-95; *see*

---

[8] ORS 31.725(2) provides:

"At the time of filing a pleading with the court, the pleading may not contain a request for an award of punitive damages. At any time after the pleading is filed, a party may move the court to allow the party to amend the pleading to assert a claim for punitive damages."

*also Springer v. Jenkins*, 47 Or 502, 508-09, 84 P 479 (1906) (construing double damages statute to include heightened *mens rea* requirement). Defendant, in fact, "does not suggest that the court should declare a doubling or trebling of damages under *every* statute to require * * * safeguards," but should instead engage in a statute-by-statute inquiry. Under that standard, and employing currently operative rules for discerning legislative intent,[9] we conclude that ORS 124.100(2)(b) does not contain a *mens rea* requirement. The text does not specify one, and, again, we may not insert what the legislature has omitted. ORS 174.010. Further, nothing in the context or the legislative history of the tripling provision would lead us to conclude that its application was limited to particularly egregious situations involving physical or financial abuse of vulnerable persons; indeed, the subject matter of the statute—the physical or financial abuse of *vulnerable* persons—suggests that the legislature properly concluded that violations were *per se* sufficiently egregious to justify the enhanced award.

In the final analysis, defendant's argument proves too much. Oregon law contains hundreds, if not thousands, of statutes and rules that impose fines on violators; it would be an unprecedented exercise of judicial power if we were to announce that, regardless of what the statutes and rules themselves provide, no fine could be imposed without clear and convincing evidence and proof of malice.

Finally, defendant argues that the trebled award violates the Due Process Clause because it is excessive. *Honda Motor Co. v. Oberg*, 512 US 415, 114 S Ct 2331, 129 L Ed 2d 336 (1994). Without belaboring the issue, we disagree. Excessive punitive damages violate the Due Process Clause because they serve no legitimate purpose, constitute arbitrary deprivation of property, and violate the "[e]lementary notions of fairness enshrined in our constitutional jurisprudence [that] dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of North America, Inc. v.*

---

[9] Intent is to be determined primarily by text and context, resort to legislative history as relevant, and (if necessary) maxims of statutory construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

*Gore*, 517 US 559, 574, 116 S Ct 1589, 134 L Ed 2d 809 (1996). The validity of a punitive damage award is determined by "three guideposts": the reprehensibility of the conduct, the disparity between the harm and the punitive award, and the difference between the punitive award and "civil penalties" imposed in comparable cases. *Id.* at 574-75. Here, defendant cannot (and does not) argue that it lacked notice that abusing vulnerable persons would result in a tripled award; the risk is express in ORS 124.100(2)(b) itself. Regarding reprehensibility, evidence supports the finding that defendant failed adequately to investigate at least two prior incidents of sexually inappropriate conduct by Haszard, and its response to plaintiff's allegation was evasive. The court found:

> "It was reasonable for this jury to conclude that [defendant] 'permitted' Lannie Haszard to abuse plaintiff by negligently failing to prevent the abuse. Clearly, there was a great deal of evidence at trial that [defendant] knew of other instances of alleged abuse committed by Mr. Haszard."

The court also commented on "the lack of credibility of almost every one of [defendant's] witnesses." Further, defendant stipulated to the fact that, of the 108 women who had been transported by Haszard, 18 had been subjected to sexually inappropriate conduct. In these circumstances, the ratio between what defendant characterizes as punitive damages and noneconomic damages—two-to-one—does not reach the "outermost limit of the due process guarantee." *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 US 408, 425, 123 S Ct 1513, 155 L Ed 2d 585 (2003). The third guidepost—comparison to civil penalties—reduces to tautology, in that the award in this case *is* a civil penalty.[10] Nor do we find significance in the fact that the jury declined to award actual punitive damages on the common-law negligence claim; the issue is not whether the jury would have awarded treble damages on the vulnerable person statute, but whether, if

---

[10] It is perhaps due to this tautology and to the fact that statutes imposing doubled or tripled awards always notify prospective defendants of the risk inherent in violations, that defendant does not cite, nor can we find, a case in which a statutorily determined multiple damage award has been found to be excessive in violation of the Due Process Clause.

the jury had done so, the award would have violated the Due Process Clause.

In sum, we conclude that the court did not err in determining that plaintiff was an "incapacitated person" under ORS 124.100, nor in trebling her noneconomic damages as required by that statute.

Affirmed.